Rosanne L. Mah (State Bar No. 242628)
Email: rmah@zlk.com
**LEVI & KORSINSKY, LLP**
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 373-1671
Facsimile: (415) 484-1294

*Counsel for Plaintiff*

[*Additional Counsel listed on signature block.*]

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRUCE BOROS, an individual, | Case No. _____ |
| Plaintiff, | **COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934** |
| vs. | **JURY TRIAL DEMANDED** |
| PORTOLA PHARMACEUTICALS INC., HOLLINGS C. RENTON, JEFFREY BIRD, LAURA BREGE, DENNIS FENTON, SCOTT GARLAND, JOHN H. JOHNSON, TED LOVE, DAVID C. STUMP, and H. WARD WOLF, | |
| Defendants. | |

Plaintiff, Dr. Bruce Boros ("Plaintiff"), by his undersigned attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Portola Pharmaceuticals Inc. ("Portola" or the "Company") and Portola's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for their violations of Sections 14(d)(4) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as well as Rule 14d-9 promulgated by the U.S. Securities and Exchange Commission (the "SEC"), arising out of material omissions and misstatements made in connection with the merger agreement (the "Merger Agreement") between and among Portola and Alexion Pharmaceuticals, Inc. ("Alexion"). Specifically, Defendants recommend that Company stockholders tender their shares in support of a proposed transaction whereby Portola will be acquired by Alexion through its wholly-owned subsidiary Odyssey Merger Sub Inc. (the "Proposed Transaction").

2. On May 5, 2020, Portola announced that it had entered into a definitive agreement (the "Merger Agreement"), pursuant to which Alexion will acquire all outstanding shares of Portola (the "Tender Offer") for $18.00 in cash per share of Portola common stock (the "Merger Consideration Price").

3. In connection with the Proposed Transaction, on May 27, 2020, Defendants authorized the filing of a materially incomplete and misleading Recommendation Statement on Schedule 14D-9 (the "Recommendation Statement") that recommended that Company stockholders tender their shares in the Tender Offer. The Recommendation Statement is materially deficient and misleading because, *inter alia*, it omits material information concerning (i) Portola's financial projections relied upon by the Company's financial advisor, Centerview Partners LLC ("Centerview") in its financial analyses; (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinions provided by Centerview; and (iii) the sales process.

4. For these reasons and as set forth in detail herein, Defendants have violated Sections 14(d) and 20(a) of the Exchange Act. Judicial intervention is warranted here to prevent irreparable harm to the Company's stockholders. Pursuant to the Merger Agreement, Merger Sub

commenced that the Tender Offer which will expire on July 1, 2020. Therefore, it is imperative that the material information omitted from the Recommendation Statement be disclosed to the Company's stockholders prior to July 1, 2020 so that they can properly determine whether to tender their shares.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from consummating the Proposed Transaction unless and until the material information discussed below is disclosed to Portola stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. The claims asserted herein arise under §§ 14(d) and 20(a) of the Exchange Act, 15 U.S.C. § 78aa. The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. The Court has personal jurisdiction over all of the defendants because each is either a corporation that is headquartered in this district, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as pursuant to 28 U.S.C. § 1391, because a substantial portion of the transactions and wrongs complained of herein, occurred in this District, and Portola is headquartered in this District.

**PARTIES**

9. Plaintiff is, at all relevant times, the owner of shares of Portola common stock.

10. Defendant Portola is a global, commercial-stage biopharmaceutical company focused on the discovery, development and commercialization of novel therapeutics in the fields of thrombosis and other hematologic conditions. Founded in 2003 in San Francisco, California, Portola has operations in the United States and Europe. Portola's principal executive offices are located at 270 E. Grand Avenue, South San Francisco, CA 94080. Portola's common stock is traded on the NASDAQ under the symbol "PTLA."

11. Defendant Hollings C. Renton ("Renton") is the Chairman of Portola's Board and has served as director since 2010.

12. Defendant Jeffrey Bird ("Bird") has served as director since 2003.

13. Defendant Laura Brege ("Brege") has served as a director since 2015.

14. Defendant Dennis Fenton ("Fenton") has been a member of the Board since 2015.

15. Defendant Scott Garland ("Garland") has been a member of the Board since 2018.

16. Defendant John H. Johnson ("Johnson") has been a member of the Board since 2014.

17. Defendant Ted Love ("Love") has been a member of the Board since 2019.

18. Defendant David C. Stump ("Stump") has been a member of the Board since 2015.

19. Defendant H. Hard Wolff ("Wolff") has been a member of the Board since 2007.

20. Defendants Renton, Bird, Brege, Fenton, Garland, Johnson, Love, Stump, and Wolff are collectively referred to herein as the "Board" or the "Individual Defendants."

21. The Individual Defendants and Portola are referred to herein as "Defendants."

## OTHER RELEVANT ENTITIES

22. Non-party Alexion is a biopharmaceutical company that develops and commercializes various therapeutic products. The company serves distributors, pharmacies, hospitals, hospital buying groups, and other healthcare providers in the United States, Europe, the Asia Pacific, and internationally. Alexion was founded in 1992 and is headquartered in Boston, Massachusetts. Alexion's common stock is traded on the New York Stock Exchange ("NYSE") under the ticker symbol "ALXN."

## FURTHER SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

23. In mid-November and early December 2019, Aradhana Sarin, Alexion's Chief Financial Officer, and Mardi Dier, Portola's Chief Financial Officer and Chief Business Officer, discussed meeting in person at the J.P. Morgan Healthcare Conference in January 2020 to discuss potential collaboration opportunities.

24. Following these initial discussions, on December 13, 2019, Dr. Sarin sent a letter to

1   Scott Garland, Portola's Chief Executive Officer, expressing Alexion's interest in a potential
2   acquisition of Portola. Two days later, on December 15, 2019, the Portola Board convened a meeting
3   to discuss Alexion's letter with management. Interested in moving forward following the initial
4   outreach, on December 17, 2019, the Portola Board convened a meeting to consider the retention of
5   a financial advisor to assist it in connection with a review of Portola's strategic alternatives. The
6   Portola Board met with two financial advisors, including Centerview. Following discussion of the
7   qualifications of the two financial advisor candidates, the Portola Board authorized management to
8   engage Centerview.

9         25.     On February 27, 2020, Ludwig Hantson, Ph.D., Alexion's President and Chief
10  Executive Officer, and Dr. Sarin spoke with Mr. Garland and Ms. Dier and conveyed Alexion's
11  interest in acquiring Portola for $18.00 per Share. Following the call, Dr. Sarin, on behalf of
12  Alexion, delivered to Mr. Garland a non-binding expression of interest to acquire Portola for $18.00
13  per Share, subject to Alexion being able to conduct due diligence on Portola.

14        26.     Shortly thereafter, on February 28, 2020, the Portola Board convened a meeting to
15  discuss Alexion's non-binding expression of interest with management and representatives of
16  Centerview in attendance. Mr. Garland updated the Portola Board with respect to his and Ms. Dier's
17  conversations with representatives of Alexion since the last meeting of the Portola Board, before
18  then describing the terms of the non-binding expression of interest. Following these discussions, the
19  Portola Board directed representatives of Centerview to contact potentially interested industry
20  participants in order to explore whether there might be other sufficient credible interest in a
21  transaction with Portola, and agreed to reconvene to discuss Alexion's expression of interest in detail
22  after management had time to consider preliminary market and financial perspectives of such
23  expression of interest.

24        27.     On March 3, 2020, at the direction of the Portola Board, representatives of
25  Centerview contacted a potentially interested party ("Party A") that had been discussed at the
26  February 28, 2020 meeting to ascertain its interest in pursuing a transaction with Portola. The
27  following day, on March 4, 2020, Party A stated it was not interested in pursuing such a transaction.
28        28.     On March 6, 2020, the Portola Board convened again to discuss Alexion's non-

binding expression of interest with management and representatives of Cooley in attendance. Prior to discussing Alexion's expression of interest, Mr. Garland and Ms. Dier discussed formally retaining Centerview as financial advisor to Portola in connection with a potential sale of Portola, and reviewed the material terms of the proposed engagement letter and the relationship disclosure letter that Centerview had provided to the Portola Board in advance of the meeting. Following these discussions, the Board finalized Centerview's engagement.

29. Following Centerview's formal engagement, the Portola Board then invited representatives of Centerview to join the meeting, and Centerview discussed certain market and financial perspectives in light of Alexion's expression of interest and provided the Portola Board with an overview of Alexion. Representatives of Centerview also discussed with the Portola Board its preliminary financial analyses, based upon the non-public, unaudited prospective financial information prepared by the management in January 2020, which revealed that the implied per Share equity value under the sum-of-the-parts discounted cash flow analysis ranged between $21.70 and $28.05. Following the presentation of these promising calculations, the Portola Board instructed management and its advisors to engage in limited due diligence exchange with Alexion, subject to Alexion expressing willingness to improve the terms of its proposal and Alexion and Portola entering into a mutually agreed confidentiality agreement.

30. Between March 8 and March 10, 2020, representatives of Alexion and Portola discussed the terms of a confidentiality agreement in connection with the proposed information exchange. The parties did not enter into a confidentiality agreement at this time because Alexion was not prepared to enter into a customary standstill and Portola was not willing to proceed without one.

31. On March 27, the Portola Board convened a meeting, with management and representatives of Cooley and Centerview in attendance for a portion of the meeting. Before representatives of Centerview joined the meeting, management, among other matters, provided the Portola Board with an extensive update on Portola's operations and prospects, including with respect to the impact of the COVID-19 pandemic and a potential merger with Alexion. During the course of this extensive discussion, as requested by the Portola Board at the prior meeting, management updated the Portola Board with respect to two sum-of-the-parts discounted cash flow analyses that

representatives of Centerview had previously provided to management. The updated illustrative sum-of-the-parts discounted cash flow analysis revealed a downward adjustment ranging between $18.70 and $24.65. Following this portion of the meeting, representatives of Centerview joined the meeting and provided the Portola Board with a general market overview, noting in particular the significant disruptive effects of the COVID-19 pandemic on the general economy and markets. The Portola Board then discussed whether it should reengage with Alexion. The Portola Board also discussed potential strategic alternatives available to it, other than an acquisition by Alexion. The Portola Board directed management to do additional work on Portola's strategic options and a standalone financial plan in order to weigh those alternatives against Alexion's interest in a transaction at $18.00 per Share. Following the meeting, the Portola Board directed management to reengage with Alexion.

32. On March 28, 2020, Mr. Garland spoke with Dr. Hantson and conveyed the Portola Board's interest in continuing a dialogue regarding a potential acquisition at an appropriate valuation. Dr. Hantson noted that Alexion would submit a revised indication of interest. Dr. Hantson also stressed that Alexion's non-binding expression of interest would be "best and final" and that Alexion's due diligence would be confirmatory in nature.

33. On April 1, 2020, Dr. Hantson, on behalf of Alexion, sent Mr. Garland a revised non-binding expression of interest to acquire Portola for $18.00 per Share. The letter indicated that Alexion would sign a confidentiality agreement with a standstill provision in exchange for an exclusivity period ending on May 6, 2020. That same day, the Portola Board met to discuss Alexion's "best and final" offer and, following further discussions, authorized management to enter into a confidentiality agreement providing Alexion with a period of exclusivity through May 6, 2020, subject to Alexion agreeing to a customary standstill.

34. On April 4, Portola and Alexion entered into mutual confidentiality agreements.

35. On April 6, 2020, Portola began to make available to Alexion and its representatives in virtual data rooms various documents for due diligence review. Shortly thereafter, management from each of Portola and Alexion began to engage in extensive due diligence presentations and discussions, including a significant number of due diligence meetings and

telephone/video calls with the other party to discuss various topics.

36. Three weeks later, on April 27, 2020, the Portola Board convened a meeting to discuss the status of the potential strategic transaction with Alexion. During this meeting, management discussed the updated long-term forecasts it had prepared, and the Portola Board engaged in an extensive discussion with management regarding such forecasts and the prospects and risks of Portola as a standalone business, including its near-term need to raise capital. The Portola Board then compared these updated projections to the initial projections that management had reviewed with the Board in January and discussed with management the underlying changes to Portola's business and outlook. Following this discussion, management provided the Portola Board with a high-level overview of the diligence process and the status of the negotiations with Alexion.

37. Two days later, the Portola Board convened a meeting to further consider the terms of the proposed acquisition with management and representatives of Centerview in attendance. During this meeting, representatives from Centerview discussed the financial implications of the potential acquisition and reviewed certain financial analyses related to Portola based on the updated projections, including the range of implied equity values per Share of $13.90 to $19.00 under the discounted cash flow analysis based on these updated projections. Following this meeting, and evidently satisfied with Alexions proposal, the Board directed management to finalize negotiations with Alexion with the view of securing the merger.

38. On May 4, 2020, the Portola Board convened a meeting with management and representatives of Centerview in attendance to analyze and consider further the terms of the proposed acquisition and entry into the merger agreement by Portola. During this meeting, representatives of Centerview reviewed with the Portola Board Centerview's financial analysis of the Merger Consideration, and rendered to the Portola Board an oral opinion that the Merger Consideration to be paid to the holders of Shares was fair, from a financial point of view, to such holders. Following Centerview's presentation, the Portola Board unanimously approved the resolutions, including approving the proposed Merger and entry into the Merger Agreement by Portola.

39. In a press release dated May 5, 2020, Portola announced that it had entered into a

Merger Agreement with Alexion.

40. The press release states in pertinent part:

BOSTON & SOUTH SAN FRANCISCO, Calif.--(BUSINESS WIRE)--Alexion Pharmaceuticals, Inc. (NASDAQ:ALXN) and Portola Pharmaceuticals, Inc. (NASDAQ:PTLA) announced today that they have entered into a definitive merger agreement for Alexion to acquire Portola, a commercial-stage biopharmaceutical company focused on life-threatening blood-related disorders. Portola's commercialized medicine, Andexxa® [coagulation factor Xa (recombinant), inactivated-zhzo], marketed as Ondexxya® in Europe, is the first and only approved Factor Xa inhibitor reversal agent, and has demonstrated transformative clinical value by rapidly reversing the anticoagulant effects of Factor Xa inhibitors rivaroxaban and apixaban in severe and uncontrolled bleeding. The acquisition will add near-term diversification to Alexion's commercial portfolio and provides the opportunity to apply the company's demonstrated global commercial excellence to create long-term value for patients and shareholders. The merger agreement has been unanimously approved by the boards of Alexion and Portola.

"The acquisition of Portola represents an important next step in our strategy to diversify beyond C5. Andexxa is a strategic fit with our existing portfolio of transformative medicines and is well-aligned with our demonstrated expertise in hematology, neurology and critical care," said Ludwig Hantson, Ph.D., Chief Executive Officer of Alexion. "We believe Andexxa has the potential to become the global standard of care for patients who experience life-threatening bleeds while taking Factor Xa inhibitors apixaban and rivaroxaban. By leveraging Alexion's strong operational and sales infrastructure and deep relationships in hospital channels, we are well positioned to expand the number of patients helped by Andexxa, while also driving value for shareholders."

"In developing and launching Andexxa, Portola has established a strong foundation for changing the standard of care for patients receiving Factor Xa inhibitors that experience a major, life-threatening bleed. Andexxa rapidly reverses the pharmacologic effect of rivaroxaban and apixaban within two minutes, reducing anti-Factor Xa activity by 92 percent," said Scott Garland, President and Chief Executive Officer of Portola. "Given their enhanced resources, global footprint and proven commercial expertise, we look forward to working with Alexion to maximize the value of Andexxa. With their commitment to commercial excellence, together, we will be able to drive stronger utilization of Andexxa, increase penetration and accelerate adoption in the critical care setting."

**Transaction Details**

Under the terms of the merger agreement, a subsidiary of Alexion will commence a tender offer to acquire all of the outstanding shares of Portola's common stock at a price of $18 per share in cash. The tender offer is subject to customary conditions, including the tender of a majority of the outstanding shares of Portola common stock, the expiration or termination of the waiting period under the Hart-Scott Rodino Antitrust Improvements Act of 1976 and receipt of certain other regulatory approvals.

> Following successful completion of the tender offer, Alexion will acquire all remaining shares not tendered in the offer at the same price of $18 per share through a merger. The transaction is expected to close in the third quarter of 2020.
>
> Alexion will fund the transaction with cash on hand. As part of the acquisition, Alexion will also be acquiring cash currently on Portola's balance sheet, net of debt of approximately $215 million that will become due upon closing. As of December 31, 2019, cash and short-term investments were approximately $430 million. The actual amounts will be determined as of the transaction close.
>
> RBC Capital Markets, LLC served as Alexion's exclusive financial advisor. Centerview Partners served as Portola's exclusive financial advisor. Cooley LLP served as Portola's legal advisor.

41. On May 27, 2020, Merger Sub commenced the Tender Offer and the Company filed the Recommendation Statement with the SEC. The Tender Offer is currently scheduled to close on July 1, 2020.

**The Materially Misleading Recommendation Statement Prevents Stockholders from Making an Informed Decision**

42. Designed to convince stockholders to tender their shares in the Tender Offer, the Recommendation Statement is rendered misleading by the omission of critical information concerning the fairness of the Proposed Transaction, and the process leading up to the signing of the Merger Agreement.

43. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to Portola stockholders.

*Material Omissions Concerning Management's Financial Projections and the Financial Advisor's Financial Analyses*

44. The Recommendation Statement describes the financial advisor's fairness opinion and the various valuation analyses the financial advisor performed in support of its opinion. However, the description of the financial advisor's fairness opinion and the underlying analyses omit key inputs and assumptions. Without this information, as described below, Portola's public stockholders are being misled as to what weight, if any, to place on the financial advisor's fairness opinion in determining whether to tender their shares. This omitted information, if disclosed, would

significantly alter the total mix of information available to Portola's stockholders, and its absence renders the description of Centerview's fairness opinion misleading.

45.     With respect to the Company's projections, the Recommendation Statement provides only the following figures for fiscal years 2020 through 2032: (a) EBIT and (b) Unlevered Free Cash Flow. The Recommendation Statement fails to disclose EBITDA projections and also fails to provide the projected line items used to calculate the disclosed Unlevered Free Cash Flow figures. Furthermore, the Recommendation Statement fails to disclose how management's stock-based compensation was calculated to derive the EBIT figures, and, specifically, whether stock-based compensation was treated as a cash or non-cash expense.

46.     With respect to Centerview's Discounted Cash Flow Analysis ("DCF"), the Recommendation Statement fails to disclose: (i) Centerview's basis for assuming that unlevered free cash flows would decline in perpetuity after December 31, 2032 at a rate of free cash flow decline between 30% to 20% year-over-year; (ii) the individual inputs and assumptions underlying the range of discount rates from 9.5% to 11.5%; (iii) the total number of the Company's fully diluted shares outstanding as of May 1, 2020; and (iv) specific reasoning of why the Company directed Centerview to assume a condition of the Company raising $100 million in gross proceeds as a result of issuance of equity securities at $7 per share in 2020, whether this was likely to occur in actuality, and if any other DCF was conducted without this precondition attached.

47.     With respect to Centerview's analysis of stock price targets, the Recommendation Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources for the price targets.

48.     With respect to Centerview's analysis of premiums paid in the transactions analyzed in the Selected Precedent Transactions Analysis, the Recommendation Statement fails to disclose the premiums observed by Centerview in the analysis.

49.     With respect to the Selected Public Companies Analysis, the Recommendation Statement fails to disclose the following: (i) the specific reasoning as for choosing each comparable company; and (ii) the total enterprise value for each comparable company and the line-items used to calculate it.

50. Finally, with respect to the Selected Precedent Transactions Analysis, the Recommendation Statement fails to disclose: (i) the total value of each selected transaction; and (ii) the specific date on which each selected transaction closed.

51. Without such undisclosed information, Portola stockholders cannot evaluate for themselves whether the financial analyses performed by the financial advisor was based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can evaluate the extent to which financial advisor's opinion and analyses should factor into their decision whether to tender their shares in the Proposed Transaction.

52. The omission of this information renders the statements in the "Opinion of Centerview Partners LLC" of the Recommendation Statement false and/or materially misleading in contravention of the Exchange Act.

53. As a result of the above-referenced misleading statements and omissions in the Recommendation Statement, Defendants violated Sections 14(d) and 20(a) of the Exchange Act.

***Material Omissions Concerning Potential Conflicts of Interest and the Sales Process leading up to the Proposed Transaction***

54. The Recommendation Statement fails to disclose material information related to potential conflicts of interest faced by the Company's executives and insiders.

55. Specifically, communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

56. However, the Recommendation Statement, fails to disclose the details of any employment and retention-related communications that occurred between Alexion and Portola executive officers and directors, including who participated in all such communications, when they occurred and their content. The Recommendation Statement further fails to disclose whether any of

Alexion's proposals or expressions of interest mentioned management retention. Stockholders must be informed of communications regarding post-transaction employment of, and merger-related benefits to, officers and directors during the negotiation of the underlying transaction. This information is necessary for Portola stockholders to understand potential conflicts of interest of management and the Board so that they can evaluate any motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

57. This is particularly important in light of the abbreviated sales process that occurred and the minimal effort that Portola took to identify competing strategic partners. As discussed herein, only Party A was contacted regarding their potential interest in a strategic transaction with Portola, and the Recommendation Statement omits to disclose the reason why only one potentially interested third party was contacted throughout the sales process. Given the limited disclosures as to the interest of other strategic partners, Portola stockholders require further disclosures as to whether any potential conflicts of interest of management and the Board exist so that they can evaluate whether any members of management or the Board were motivated to not act solely in the best interests of the Company's stockholders

58. The omission of this information renders the statements in the "Past Contacts, Transactions, Negotiations and Agreements.," and "Background of the Offer and the Merger" sections of the Recommendation Statement materially false and/or so incomplete as to be misleading.

59. Based on the foregoing disclosure deficiencies in the Recommendation Statement, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Portola stockholders will suffer, absent judicial intervention, if Portola's stockholders are required to decide whether to tender their shares without the above-referenced material misstatements and omissions being remedied. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention

**CLAIMS FOR RELIEF**

## COUNT I

**Individual Claims Against All Defendants for Violations of § 14(d)(4) of the Securities Exchange Act of 1934 and SEC Rule 14d-9 (17 C.F.R. § 240.14d-9)**

60. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

61. Defendants have caused the Recommendation Statement to be issued with the intention of soliciting stockholder support of the Proposed Transaction.

62. Section 14(d)(4) of the Exchange Act and SEC Rule 14d-9 promulgated thereunder require full and complete disclosure in connection with tender offers.

63. The Recommendation Statement violates § 14(d)(4) and Rule 14d-9 because it omits material facts, including those set forth above, which omissions render the Recommendation Statement false and/or misleading.

64. Defendants knowingly or with deliberate recklessness omitted the material information identified above from the Recommendation Statement, causing certain statements therein to be materially incomplete and therefore misleading. Indeed, while defendants had full and unfettered access to and/or actually reviewed the omitted material information in connection with approving the Proposed Transaction, they allowed it to be omitted from the Recommendation Statement, rendering certain portions of the Recommendation Statement so materially incomplete as to be materially misleading.

65. The misrepresentations and omissions in the Recommendation Statement are material to Plaintiff, and Plaintiff will be deprived of their entitlement to make a fully informed decision if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

## COUNT II

**Individual Claims Against All Defendants for Violations of § 20(a) of the 1934 Act Against the Individual Defendants**

66. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

67. The Individual Defendants acted as controlling persons of Portola within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers

and/or directors of Portola and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

68. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

69. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the preparation and issuance of the Recommendation Statement.

70. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

71. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(d)(4) of the 1934 Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

a) declaring that the Recommendation Statement is materially false or misleading;

b) enjoining, preliminarily and permanently, the Proposed Transaction;

c) in the event that the transaction is consummated before the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

d) directing that Defendants account to Plaintiff for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

e) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

f) granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: June 11, 2020

**LEVI & KORSINSKY, LLP**

By: /s/ *Rosanne L. Mah*
Rosanne L. Mah
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 373-1671
Facsimile: (415) 484-1294

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice*)
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 337-1567
Email: denright@zlk.com
etripodi@zlk.com

*Counsel for Plaintiff*